FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 0 3 2026

KEVIN P. WEIMER, Clerk
By: [signature] Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JUSTIN AAMIR ADKINS, ) Civil Action No. 1:26-CV-4376 -MHC
Plaintiff, )
v. )
CHURCH OF SCIENTOLOGY )
INTERNATIONAL; )
CHURCH OF SCIENTOLOGY FLAG )
SERVICE ORGANIZATION; )
CHURCH OF SCIENTOLOGY OF )
GEORGIA; and
DEBBIE BENK, individually and as an alleged
agent of the Church,
Defendants.

**AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Justin Aamir Adkins, proceeding pro se, alleges as follows:

**I. NATURE OF THE ACTION**

1. This action arises from Defendants' alleged race- and ancestry-based impairment of Plaintiff's paid training and auditing relationship.

2. Plaintiff alleges that Defendants accepted his payment and performance, approved his written training plan, and then impaired his access to the contracted services after Defendant Debbie Benk communicated that Plaintiff should receive no additional auditing.

3. Plaintiff is African American and alleges that Defendants' conduct was motivated, at least in part, by his race, ancestry, and ethnic identity, including his distinctive ethnic name and association with the Nation of Islam.

4. Plaintiff relies on Exhibit 3b only as contextual evidence that Defendants' own publication expressly distinguished between treatment of "Black people" and "whites."

Exhibit 3a is Plaintiff's self derived definition of Exhibit 3b and is not alleged to be a statement or admission by Defendants.

5. Plaintiff brings:

a. a claim under 42 U.S.C. § 1981;

b. a state-law breach-of-contract claim; and

c. a state-law claim for intentional infliction of emotional distress.

6. Plaintiff does not ask the Court to determine religious doctrine, compel religious belief, or regulate ecclesiastical governance. Plaintiff seeks relief for alleged discrimination and interference with paid contractual services.

## II. JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts a claim under 42 U.S.C. § 1981.

8. The Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367(a).

9. Venue is proper under 28 U.S.C. § 1391(b) because Defendant Church of Scientology of Georgia operates in this District and substantial conduct concerning the contractual relationship and alleged interference occurred in Georgia.

10. To the extent venue is disputed, Plaintiff requests transfer rather than dismissal under 28 U.S.C. § 1406(a).

## III. PARTIES

11. Plaintiff Justin Aamir Adkins is an African American man residing in Stone Mountain, Georgia.

12. Defendant Church of Scientology International is a California organization that conducts or directs activities affecting the challenged relationship.

13. Defendant Church of Scientology Flag Service Organization operated the Flag Land Base in Clearwater, Florida and provided or controlled the training and auditing services at issue.

14. Defendant Church of Scientology of Georgia operated the Atlanta organization and employed or authorized Defendant Benk.

15. Defendant Debbie Benk was, on information and belief, the Executive Director of the Atlanta organization when she communicated with Flag concerning Plaintiff.

## IV. FACTUAL ALLEGATIONS

### A. Contractual relationship and performance

16. Plaintiff entered a paid contractual relationship with Defendants for auditor training and related auditing services.

17. Plaintiff paid for training and auditing services and performed substantial obligations under the relationship.

18. Plaintiff arrived at Flag on or about January 31, 2015, to complete his program.

19. Plaintiff's April 10, 2015 CSW describes his training plan, leave of absence, financial commitments, study schedule, and intended professional auditor training. A copy is attached as Exhibit 4.

20. The CSW states that Plaintiff completed Purification, SRD Additionals, and Grades I through III and was progressing through Grade IV.

21. Plaintiff paid for a fourteen-intensive package and a training package.

22. The CSW contains an approval notation by ED Foundation Deja Nichols dated April 22, 2015.

23. Plaintiff relied on the written approval, Defendants' acceptance of payment, and Defendants' performance in continuing his training and auditing cycle.

**B. Racial and ethnic context**

24. Plaintiff is African American and has an ethnically distinctive name and identity.

25. Exhibit 3b is a publication titled "Message for Black People." It states that Scientology offers Black people a "wonderful chance," refers specifically to "Black people of America," and states that "the gates of Scientology are wide open to Black people." and "If Scientology were to be used by the Black People of America, the gains for which they have striven so hard in the social world would be guaranteed."

26. Exhibit 3b also states: "Completely aside from what it means to whites," thereby expressly distinguishing Black people from whites in discussing the organization's opportunity and treatment.

27. Plaintiff offers Exhibit 3b to establish the racial and ethnic context known or recognized within Defendants' organization.

28. Exhibit 3a is Plaintiff's self derived definition of the phrase "completely aside from." Plaintiff does not allege that Exhibit 3a was authored or adopted by any Defendant.

29. Plaintiff alleges that the racial context in Exhibit 3b, combined with the adverse contractual conduct alleged below, supports an inference that race and ancestry were considered in Defendants' treatment of him.

30. Plaintiff does not rely on Exhibits 3a or 3b alone to establish discriminatory intent or causation.

**C. Defendant Benk's communication and denial of correction**

31. On or about May 4, 2015, Plaintiff asked Defendant Benk to withdraw or correct communications concerning him because they had created confusion concerning his training and auditing.

32. Defendant Benk responded on or about May 6, 2015 in writing: "At this time, I am not sending a new telex to Flag withdrawing my communication."

33. Plaintiff alleges that Defendant Benk had communicated to Flag, in substance: "I no longer consider Justin Aamir Adkins an upstat member of the group. He should not receive any more auditing and should just train and come back to Georgia." Effectively "penalizing an upstatistic while rewarding a down statistic" - a law used by suppressive personalities.

34. Plaintiff alleges that the communication was false or materially misleading because Plaintiff had paid for services, completed substantial training, demonstrating a high stastistic and possessed written approval to continue his program.

35. Plaintiff alleges that Flag relied on the communication by restricting or terminating his access to auditing and by preventing completion of the approved training cycle, thereby "penalizing production and getting no production."

36. Plaintiff alleges that the communication targeted him by name and ethnic identity and was motivated, at least in part, by race and ancestry.

**D. Continuing conduct and analogous Bixler theory**

37. Plaintiff alleges that Defendants did not merely commit a single isolated act but continued to deny, refuse to correct, or obstruct Plaintiff's efforts to obtain recognition of his contractual rights - each act, suppressive.

38. Plaintiff sent later requests for review, correction, and internal relief, including communications in 2022, 2023, 2024, 2025 and 2026.

39. Plaintiff alleges that those later communications provide evidence of notice, refusal to correct, continuing contractual nonperformance, and later independent conduct.

40. Plaintiff recognizes that a later refusal to correct a discrete 2015 act does not automatically revive a time-barred claim. Under National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), discrete discriminatory acts ordinarily must be challenged within the applicable limitations period.

41. Plaintiff therefore pleads in the alternative that:

a. later discriminatory denials or impairments were independent acts within the limitations period;

b. Defendants' continuing refusal to recognize or perform contractual obligations constitutes continuing breach or nonperformance;

c. any later repeated race-based harassment, if established through discovery, constituted a continuing hostile-environment violation; and

d. equitable tolling applies only to the extent Defendants concealed material facts, obstructed a reasonably available remedy, or induced Plaintiff reasonably to defer suit.

42. Plaintiff cites *Bixler v. Church of Scientology International*, No. B339009 (Cal. Ct. App. May 19, 2026), only by analogy and only for any reasoning concerning later wrongful conduct, internal remedial procedures, refusal to correct, or continuing injury. Plaintiff does not contend that *Bixler* is binding or that it automatically tolls a federal limitations period.

43. Exhibits 5, 9, 9A, and 10 are offered only for notice, later communications, alleged continuing nonperformance, and the existence of an internal dispute. They do not independently establish the original 2015 discrimination claim.

**E. Arbitration and internal procedures**

44. Plaintiff anticipates that Defendants may rely on a forced-arbitration clause or internal dispute mechanism.

45. Plaintiff denies that any Defendant has established:

a. a valid agreement to arbitrate these claims;

b. Plaintiff's assent to arbitration of statutory discrimination claims;

c. authority of the person or entity presenting the clause;

d. that the clause covers claims against Defendant Benk individually;

e. that the clause covers later tortious conduct or post-contract conduct; or

f. that the clause is enforceable under applicable law.

46. Plaintiff further alleges that any purported clause is unenforceable because the agreement, its terms, its formation, its scope, and its application to Plaintiff's statutory claims are disputed.

47. Plaintiff requests that the Court decide contract formation, enforceability, scope, and any challenge to arbitration before compelling arbitration. Under 9 U.S.C. § 4, arbitration may be compelled only where the parties agreed to arbitrate the particular dispute.

48. Plaintiff in incorporating paragraphs 1 through 47, alleges, that the Defendant's blatant suppression of an upstat, Professional Scientologist, and thereby suppression of Scientology, by the aforementioned allegations, is tantamount to there own knowing and willing departure from the Religion and Practice of standard Scientology, and as such, the

Defendants may not be afforded the Beingness granted to rational Human Beings. Furthermore, as its Founder L. Ron Hubbard ordered in HCO POLICY LETTER SUPPRESSIVE ACTS: **"Nothing in the policy herein shall ever or under any circumstances justify any violation of the laws of the land or intentional legal wrongs." "Any such offense shall subject the offender to penalties prescribed by law as well as to ethics and justice actions."**, sufficiently permits the court to exercise its Power, Jurisdiction and Authority to summarily handle by intervening to grant protection from suppression of Scientology, suppression of a Scientologist, whenever such occurrence appear before it. Plaintiff asks the Court to grant enforcement of its own civil penalties wherein intentional legal wrongs, resulting in violation of the laws of the land, has been demonstrated, as a matter of law, in any clause that Defendants own directives prove apply to these claims and that subjects them to it, under applicable law.

## COUNT I

### Racial and Ancestry Discrimination Under 42 U.S.C. § 1981

49. Plaintiff incorporates paragraphs 1 through 48.

50. 42 U.S.C. § 1981 protects the same right to make and enforce contracts as is enjoyed by white citizens and includes the making, performance, modification, termination, and enjoyment of contractual benefits.

51. Under Saint Francis College v. Al-Khazraji, 481 U.S. 604 (1987), § 1981 reaches intentional discrimination based on ancestry or ethnic characteristics, even where modern racial classifications might place the relevant groups within the same broad racial category.

52. Plaintiff's distinctive ethnic name, African Ancestry, identity as a Black African American Man, and association with the Nation of Islam are alleged as protected racial or ethnic characteristics, not merely as religious beliefs.

53. Plaintiff possessed a contractual relationship for paid training and auditing services.

54. Defendants impaired Plaintiff's ability to perform, continue, and enjoy the benefits of that relationship.

55. Plaintiff alleges that Defendants' conduct was intentional and that race or ancestry was a but-for cause of the impairment. See Comcast Corp. v. National Ass'n of African American-Owned Media, 589 U.S. 327 (2020).

56. Exhibit 3b supplies racial context by expressly discussing Black people and Whites. Exhibit 3a explains Plaintiff's self defined understanding of that language but is not alleged as a Defendant statement.

57. Plaintiff alleges that the challenged conduct would not have occurred but for his race, ancestry, ethnic identity, and distinctive ethnic name.

58. Plaintiff suffered loss of paid services, loss of contractual benefits, professional injury, emotional distress, and other damages.

**COUNT II**

**Breach of Contract**

59. Plaintiff incorporates paragraphs 1 through 58.

60. Plaintiff entered a contract, or enforceable contractual arrangement, for specified training and auditing services.

61. The essential terms included Plaintiff's payment and participation and Defendants' provision of the approved training and auditing cycle.

62. Plaintiff performed or substantially performed his obligations by paying, participating, and completing substantial coursework, thereby having his personal statistic very high.

63. Defendants breached by restricting or terminating services, refusing to permit completion of the approved cycle, and refusing to recognize Plaintiff's contractual rights - each one, a suppressive act.

64. Plaintiff suffered damages as a direct result.

65. Plaintiff pleads this count against each Defendant shown to be a contracting party, agent, principal, assignee, successor, or ratifying entity.

## COUNT III

### Intentional Infliction of Emotional Distress

66. Plaintiff incorporates paragraphs 1 through 65.

67. Defendants knew Plaintiff had paid substantial sums, completed extensive training, relied on written approvals, and thereby had a personal high statistic and sought to complete a defined professional program.

68. Plaintiff alleges that Defendants nevertheless used a false, defamatory or materially misleading communication to characterize him as unworthy of continued auditing, and directed that he be denied services.

69. Plaintiff further alleges that Defendants refused to correct the communication after receiving notice of its falsity and its damaging effect.

70. Plaintiff alleges that the conduct was intentional or reckless, extreme and outrageous, and calculated to cause suppression of an upstat Professional Scientologist, suppression of Scientology and severe emotional distress.

71. Plaintiff suffered severe emotional distress, humiliation, anxiety, professional harm, and financial consequences.

72. Plaintiff pleads this claim in the alternative to his contract claim to the extent the conduct exceeds a mere breach of contract and independently caused severe emotional injury.

## V. RELIEF AND LIMITATIONS

73. Plaintiff seeks damages for timely claims and for later independent acts occurring within the applicable limitations period.

74. Plaintiff does not rely on continuing effects alone to revive a discrete time-barred act.

75. Plaintiff preserves any equitable-tolling argument supported by proof of concealment, obstruction, reasonable reliance on internal procedures, or other legally recognized grounds.

## VI. PRAYER FOR RELIEF

Plaintiff requests:

A. compensatory damages in an amount proved at trial;

B. punitive damages where authorized by law;

C. damages for lost training and contractual benefits;

D. damages for emotional distress;

E. declaratory relief concerning the parties' contractual rights;

F. narrowly tailored injunctive relief against future discriminatory impairment of contractual services;

G. costs and fees to the extent authorized by law;

H. denial of any motion to compel arbitration unless Defendants prove a valid and applicable arbitration agreement; and

I. such other relief as the Court deems just and proper.

Respectfully submitted this 3 day of September 2026.

**Justin Aamir Adkins**
Plaintiff, Pro Se
Stone Mountain, Georgia 30087
Telephone: (678) 587-8412
Email: support@gracecovenantministries.org

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**EXHIBIT INDEX**

1. Communications concerning Plaintiff's training status and Defendant Benk's communication.

2. "The Rights of the Field Auditor."

3a. Plaintiff's interpretation of Exhibit 3b.\ 3b. "Message for Black People."

3. Plaintiff's April 10, 2015 CSW and approvals.

4. Plaintiff's May 2026 open letter.

5. David Gentile letter.

6. Plaintiff's December 11, 2015 report.

7. Internal communications concerning Plaintiff's dispute.

8. 2026 communications with the FLB Justice Chief.

9A. 2026 petition for amnesty.

9. 2026 communications concerning illustrated Scientology books.