**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JUSTIN AAMIR ADKINS,<br><br>Plaintiff,<br><br>v.<br><br>CHURCH OF SCIENTOLOGY INTERNATIONAL, CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION, CHURCH OF SCIENTOLOGY OF GEORGIA, and DEBBIE BENK, individually and as an alleged agent of the Church,<br><br>Defendants. | ) | Civil Action File No. 1:26-CV-4376-MHC |

**DEFENDANTS CHURCH OF SCIENTOLOGY INTERNATIONAL, CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION, AND CHURCH OF SCIENTOLOGY OF GEORGIA'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION**

Alycen A. Moss
Christopher E. Neill
Cozen O'Connor
1230 Peachtree Street, N.E.
The Promenade, Suite 400
Atlanta, GA 30309
Telephone: 404-572-2128
Email: cneill@cozen.com

*Attorneys for Defendants Church of Scientology International, Church of Scientology Flag Service Organization, and Church of Scientology of Georgia*

# TABLE OF CONTENTS

I. INTRODUCTION....1
II. FACTUAL BACKGROUND....2
A. The Parties....2
B. Plaintiff's Participation in Scientology Auditor Training....3
C. The Lawsuit....5
III. LEGAL ARGUMENT....5
A. The Claims Against CSI and FSO Should Be Dismissed for Lack of Personal Jurisdiction....5
1. Legal Standard....6
2. The Court Lacks In Personam Jurisdiction Over CSI....7
3. The Court Lacks In Personam Jurisdiction Over FSO....12
B. All of Plaintiff's Claims are Time-Barred....14
1. Count I Should Be Dismissed Because Plaintiff Does Not State a Timely § 1981 Claim....14
2. Count II Fails to State a Timely Breach of Contract Claim....15
3. Count III Should Be Dismissed as Untimely and for Failure to State an IIED Claim....18
C. Ecclesiastical Abstention....19
D. The Court Should Compel Arbitration of Any Remaining Claims....21
IV. CONCLUSION....25

# I. INTRODUCTION

This dispute arises out of Plaintiff Justin Aamir Adkins's removal from the Church of Scientology. In 2015, Plaintiff traveled to Clearwater, Florida, to participate in a ministerial training program through the Church. Plaintiff's personal conduct resulted in him being removed from the training and ultimately excommunicated from Scientology altogether. Now, more than ten years later, Plaintiff contests his removal on unsupported racial discrimination grounds and alleges that unspecified defendants breached unspecified contracts with him related to his training. Plaintiff's claims must be dismissed because they are defective, they are too late, and they were brought in the wrong forum.

First, two of the Defendants have no contacts with Georgia, and claims against them must be dismissed for lack of personal jurisdiction. Second, all of Plaintiff's discrimination, breach of contract, and emotional distress claims are time-barred by the applicable statutes of limitations. Third, the ecclesiastical abstention doctrine prohibits this Court from resolving fundamentally religious disputes between the Parties. Finally, should any of the claims survive dismissal on those grounds, Defendants request the Court compel arbitration based on the enforceable contracts between the Parties.

## II. FACTUAL BACKGROUND

### A. The Parties

Plaintiff Justin Aamir Adkins is an individual residing in Stone Mountain, Georgia. Am. Compl. ¶ 11.

Defendant Church of Scientology International ("CSI") is "a California organization that conducts or directs activities affecting the challenged relationship." *Id.* ¶ 12. The Amended Complaint does not allege that CSI is incorporated in Georgia or maintains its principal place of business here. Indeed, CSI is a California nonprofit religious corporation with a principal address in Los Angeles, California. **Declaration of Lynn Farny, Exhibit A, ¶¶ 4-5.** CSI does not own property in Georgia and does not maintain an office or employees in Georgia. **Ex. A, ¶¶ 8-9.**

Plaintiff alleges that Defendant Church of Scientology Flag Service Organization, Inc. ("FSO") "provided or controlled the training and auditing services at issue" in Clearwater, Florida and Am. Compl. ¶ 13. FSO is a Florida not-for-profit corporation with its principal place of business in Clearwater, Florida. **Declaration of Peter Mansell, Exhibit B., ¶¶ 3-4.** FSO does not own property in Georgia and does not maintain an office or employees in Georgia. **Ex. B., ¶¶ 6-7.**

Plaintiff alleges that Defendant Church of Scientology of Georgia, Inc. ("CSG") "operated the Atlanta organization and employed or authorized Defendant [Debbie] Benk." Am. Compl. ¶ 14. CSG is a Georgia domestic nonprofit corporation

with a principal office at 5395 Roswell Road in Sandy Springs, Georgia. **Declaration of Cynthia Lehocz, Exhibit C, ¶¶ 2-3.** Plaintiff has also named Debbie Benk ("Ms. Benk"), a former religious staff member of CSG, as a defendant to this action.

**B. <u>Plaintiff's Participation in Scientology Auditor Training</u>**

Plaintiff alleges that he entered into a paid, contractual relationship for Scientology auditor training[1] services for which he traveled to Clearwater, Florida to complete. *Id.* ¶¶ 16, 18. Plaintiff arrived at FSO on or about January 31, 2015 to complete his program which he discussed in an April 10, 2015 "CSW," which allegedly described Plaintiff's religious training plan, leave of absence, financial commitments, study schedule, and intended professional auditor training. *Id.* ¶¶ 18-19. Plaintiff alleges that he had completed certain portions of his program and was progressing through "Grade IV," and that the CSW contained an approval notation dated April 22, 2015. *Id.* ¶ 22.

On or about April 5, 2015, Ms. Benk allegedly communicated to FSO, in substance: "I no longer consider Justin Aamir Adkins an upstat member of the group. He should not receive any more auditing and should just train and come back to

[1] In Scientology, "auditing" is a religious practice through which a trained Church minister or minister-in-training, called an "auditor," conducts prescribed processes with a participant to address matters of spiritual distress and spiritual advancement. The processes include sets of questions or directions designed to assist the participant in examining aspects of the participant's existence and spiritual condition.

Georgia." *Id.* ¶ 33. On or about May 4, 2015, Plaintiff asked Ms. Benk to "withdraw or correct communications concerning him because they had created confusion concerning his training and auditing" on the grounds that it was false or misleading *Id.* ¶¶ 31, 34. According to Plaintiff, Ms. Benk responded in writing approximately two days later: "At this time, I am not sending a new telex to Flag withdrawing my communication." *Id.* ¶ 32. Plaintiff alleges that his race, ancestry, ethnic identity, distinctive name, and association with the Nation of Islam played a role in Defendants' treatment of him, notwithstanding that the communication at issue from Ms. Benk referenced none of those characteristics. *Id.* ¶¶ 3, 24, 36, 52.

Although the specific communication and resulting denial of services occurred in 2015, Plaintiff alleges that he subsequently continued to seek internal review or correction of the dispute. Specifically, Plaintiff alleges that he sent later "requests for review, correction, and internal relief," including communications in 2022, 2023, 2024, 2025, and 2026. *Id.* ¶ 38. He alleges generally that those communications provide evidence of "notice, refusal to correct, continuing contractual nonperformance, and later independent conduct." *Id.* ¶ 39. The Amended Complaint does not identify in those paragraphs a particular later communication comparable to the May 2015 communication attributed to Debbie Benk; instead, Plaintiff characterizes his later communications collectively as requests for "review, correction, and internal relief." *Id.* ¶¶ 37-39.

### C. The Lawsuit

Plaintiff filed the operative Amended Complaint on September 3, 2026. ECF No. 6. It asserts federal-question jurisdiction based upon the § 1981 claim and supplemental jurisdiction over the two Georgia-law claims. *Id.* ¶¶ 7-8. In his Amended Complaint, Plaintiff asserts three causes of action.

Count I alleges race and ancestry discrimination under 42 U.S.C. § 1981. Plaintiff alleges that Defendants impaired his ability to perform, continue, and enjoy the benefits of his contractual relationship and asserts that race or ancestry was a "but-for cause" of the impairment. *Id.* ¶¶ 49-58.

Count II asserts breach of contract. Plaintiff alleges that he entered a contract for ministerial auditing services, and that Defendants breached that arrangement "by restricting or terminating services, refusing to permit completion of the approved cycle, and refusing to recognize Plaintiff's contractual rights." *Id.* ¶ 63. Notably, Plaintiff does not identify the actual contract alleged to be breached or which Defendant allegedly breached it.

Finally, Count III asserts intentional infliction of emotional distress based principally upon the same alleged conduct. *Id.* ¶¶ 67-69.

## III. LEGAL ARGUMENT

### A. The Claims Against CSI and FSO Should Be Dismissed for Lack of Personal Jurisdiction.

**1. Legal Standard**

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). In considering a Rule 12(b)(2) motion to dismiss, "a court may consider affidavits and other proof outside the pleadings because, unlike a motion under Rule 12(b)(6), it is a test of Plaintiff's proof." *James Whiten Livestock, Inc. v. Western Iowa Farms, Co.*, 750 F. Supp. 529, 531 (N.D. Ga. 1990).

A federal court "undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands*, 593 F.3d at 1257-58. The Georgia long-arm statute provides, in part, that a court may generally exercise personal jurisdiction over a nonresident if he or she:

> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

O.C.G.A. § 9-10-91.

To satisfy the constitutional requirements for the exercise of personal jurisdiction under the Due Process Clause, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Diamond Crystal Brands*, 593 F.3d at 1267 (quoting *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414 (1984), and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A nonresident defendant is subject to personal jurisdiction in a state only when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

**2. The Court Lacks In Personam Jurisdiction Over CSI.**

**a. Subsection (1) of the long-arm statute is inapplicable because CSI did not transact any business within Georgia.**

CSI did not transact any business within Georgia so as to warrant this Court asserting personal jurisdiction over it. The first prong of Georgia's long-arm statute is implicated where a party transacted any business in Georgia. To "transact any business" CSI must have "purposefully done some act or consummated some transaction" in Georgia. *Diamond Crystal Brands*, 593 F.3d at 1260.

Here, CSI had no such business transactions. The <u>only</u> conduct that Plaintiff alleges of CSI specifically is that it "directs activities affecting the challenged

relationship." Am. Compl. ¶ 12. This lone, conclusory allegation does not establish what actual conduct is alleged on CSI's behalf or where such conduct was alleged to take place. In reality, CSI did not contract with Plaintiff, did not provide the auditing services at issue, and did not accept Plaintiff's payment for the services at issue **Ex. A, ¶¶ 15-17.** Thus, Plaintiff's conclusory allegation that CSI "conducts or directs activities affecting" the parties' relationship cannot establish that CSI itself transacted claim-related business in Georgia.

**b. Subsection (2) of the long-arm statute is inapplicable because CSI committed no tortious act in Georgia.**

CSI committed no tortious act in Georgia so as to warrant this Court asserting personal jurisdiction over it. Under subsection (2) of the long-arm statute, "a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious act or omission within Georgia" (so long as the exercise of that personal jurisdiction comports with constitutional due process). *Kason Indus.*, 952 F.Supp.2d at 1346.

Again, the only conduct alleged against CSI specifically is that it "directs activities affecting the challenged relationship." Am. Compl. ¶ 12. The tortious conduct alleged in the Amended Complaint—namely, the allegedly discriminatory communication from Debbie Benk—was in no way attributed to CSI. Plaintiff identifies no communication, decision, representation, or other tortious act performed in Georgia by CSI. CSI did not employ Debbie Benk, did not direct the allegedly actionable communication, and did not make the decision to restrict

Plaintiff's auditing. **Ex. A, ¶¶ 12-19.** Thus, personal jurisdiction pursuant to subsection (2) of the long-arm statute is improper.

**c. Subsection (3) of the long-arm statute is inapplicable because CSI committed no tortious injury in Georgia, nor did it regularly do or solicit business in Georgia.**

Subsection (3) of Georgia's long-arm statute is similarly inapplicable. Subsection (3) of Georgia's long-arm statute authorizes courts to exercise personal jurisdiction if a person commits a tortious injury in Georgia caused by an act or omission outside Georgia, only "if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3). Plaintiff cannot satisfy § 9-10-91(3) merely because he allegedly suffered consequences while residing in Georgia. Subsection (3) expressly requires more than an alleged in-state injury from out-of-state conduct. It further requires that the tortfeasor regularly do or solicit business, engage in another persistent course of conduct, or derive substantial revenue from Georgia-related goods or services. There are no allegations to support any of these bases, so § 9-10-91(3) likewise does not create personal jurisdiction over CSI.

**d. Exercising jurisdiction over CSI would violate the Due Process Clause.**

Even if jurisdiction were appropriate under Georgia's long-arm statute, due process concerns prohibit this Court's exercise of personal jurisdiction over CSI.

Federal due process demands that an out-of-state defendant have "minimum contacts" with the forum state such that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *Sarvint Techs., Inc. v. Omsignal, Inc.*, 161 F.Supp.3d 1250, 1259 (N.D. Ga. 2015) (quoting *Int'l Shoe*, 326 U.S. at 316). "Due process contemplates two types of jurisdiction over the person: general and specific jurisdiction." *Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, Okla.*, 245 F.Supp.2d 1248, 1253 (N.D. Ga. 2002) (citing *Helicopteros*, 466 U.S. at 414-15)).

"General jurisdiction exists when the nonresident's affiliations with the State are so continuous and systematic as to render [the nonresident] essentially at home in the forum State, thereby permitting a judgment on any claim." *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F.Supp.3d 1303, 1312 (N.D. Ga. 2014) (quoting *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014). It would be impossible for Plaintiff to argue that CSI's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum.

The specific jurisdiction inquiry centers on "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). "Because the constitutional limits on Georgia's adjudicative authority principally protect the liberty of the nonresident defendant – not the convenience of plaintiffs or third parties – the connection to Georgia must arise out

of contacts that the defendant himself creates." *Ralls*, 27 F.Supp.3d at 1316. "So before Georgia courts can exercise personal jurisdiction, a nonresident's *suit-related* conduct must create a *substantial connection* with the state." *Id.* (emphasis in original). "For this reason, this analysis focuses on the defendant's contacts with Georgia itself, not the defendant's contacts with persons who reside there." *Id*.

Plaintiff cannot demonstrate specific jurisdiction here, as CSI never transacted any business in Georgia, never did any business in Georgia, and never solicited any business in Georgia. The lone, conclusory allegation against CSI in the Amended Complaint simply bears no connection to Georgia.

To decide whether exercising personal jurisdiction would violate fair play and substantial justice requires consideration of several factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute. *Ralls*, 27 F.Supp.3d at 1319. The burden to CSI of defending the asserted claims in Georgia would be substantial. CSI operates in California, and any relevant and necessary defense witnesses or pertinent documents are located within California. To compel CSI to incur the expense and burden of defending against these claims in Georgia would be unreasonable. Accordingly, this Court's exercise of jurisdiction over CSI would not comport with Constitutional due process.

### 3. The Court Lacks In Personam Jurisdiction Over FSO.

#### a. Subsection (1) of the long-arm statute is inapplicable because FSO did not transact any business within Georgia.

FSO likewise did not transact any business within Georgia so as to warrant this Court asserting personal jurisdiction over it. The Amended Complaint alleges that FSO provided or controlled the training and auditing services at issue, and restricted or terminated Plaintiff's access to auditing services, all of which was generally alleged to occur in Clearwater, Florida. Am. Compl. ¶¶ 13, 18, 35. Thus, none of the alleged conduct on FSO's behalf can establish that FSO itself transacted business in Georgia.

#### b. Subsection (2) of the long-arm statute is inapplicable because FSO committed no tortious act in Georgia.

FSO did not commit any tortious act in Georgia so as to warrant this Court asserting personal jurisdiction over it. Again, the tortious conduct alleged in the Amended Complaint was the allegedly discriminatory communication from Ms. Benk. While FSO was the alleged recipient of this communication, receiving a communication from an employee of another entity in Georgia is not tantamount to FSO's purposeful contact with Georgia. *See Commercial Cas. Ins. Co., Inc. v. BSE Management, Inc.*, 734 F. Supp. 511, 516 (N.D.Ga.,1990) ("mere telephone or mail contact with an out-of-state defendant is insufficient to establish purposeful activity with Georgia required by the long-arm statute"). Thus, personal jurisdiction pursuant to subsection (2) of the long-arm statute is improper.

**c. Subsection (3) of the long-arm statute is inapplicable because FSO committed no tortious injury in Georgia caused by an act outside of Georgia, nor did it regularly do or solicit business in Georgia.**

Subsection (3) of Georgia's long-arm statute is similarly inapplicable. It authorizes personal jurisdiction if a person commits a tortious injury in Georgia caused by an act or omission outside Georgia, only "if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3). For the same reasons as discussed with respect to CSI above, Plaintiff cannot satisfy § 9-10-91(3) merely because he allegedly suffered consequences while residing in Georgia. There are no allegations to support any of these bases, so § 9-10-91(3) likewise does not create personal jurisdiction over FSO.

**d. Exercising jurisdiction over FSO would violate the Due Process Clause.**

Even if jurisdiction were appropriate under Georgia's long-arm statute, due process concerns prohibit this Court's exercise of personal jurisdiction over FSO.

As with CSI, the Amended Complaint fails to allege that Plaintiff's claims arise out of or relate to FSO's contacts with Georgia, or that FSO has purposefully availed itself of the forum state. The burden to FSO of defending the asserted claims in Georgia would be equally substantial. FSO operates in Florida, and most of the relevant and necessary defense witnesses or pertinent documents are located within

Florida. To compel FSO to incur the expense and burden of defending against these claims in Georgia would be unreasonable. Accordingly, this Court's exercise of jurisdiction over FSO would not comport with Constitutional due process.

## B. All of Plaintiff's Claims are Time-Barred.

All of the relevant conduct supporting each of Plaintiff's causes of action took place in or around 2015. Thus, all of Plaintiff's causes of action[2] are barred by the applicable statutes of limitations.

### 1. Count I Should Be Dismissed Because Plaintiff Does Not State a Timely § 1981 Claim.

Plaintiff's federal discrimination claim under 42 U.S.C. § 1981 is subject to, at most, a four-year limitations period. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). The conduct and communications that gave rise to the alleged discrimination at issue in Plaintiff's § 1981 Claim took place in 2015. Plaintiff alleges that Benk communicated to FSO in 2015 that he "should not receive any more auditing." Am. Compl. ¶ 33. Plaintiff alleges that FSO then relied upon the communication by restricting or terminating his auditing and preventing completion of the approved training cycle. *Id.* ¶ 34. Plaintiff knew about the alleged communication at the time and asked Benk to withdraw or correct it in May 2015.

[2] Because Defendants contend that this Court does not have personal jurisdiction over CSI or FSO, the timeliness arguments are presented in the context of the remaining claims against CSG. However, if the Court does not hold that CSI and FSO should be dismissed on personal jurisdiction grounds, Defendants contend that these statute of limitations arguments are equally applicable to the claims against those Defendants as well.

*Id.* ¶ 31. Thus, the applicable limitations period for discrimination alleged to arise from the 2015 communication expired in 2019 at the latest.

As Plaintiff himself concedes, "a later refusal to correct a discrete 2015 act does not automatically revive a time-barred claim." *Id.* ¶ 40. Nor does Plaintiff plausibly identify independent discriminatory transactions so as to sufficiently allege continuing violations or any other basis for seeking to toll the limitations period. Instead, Plaintiff largely characterizes later communications, requests, and refusals to correct the earlier dispute as new wrongdoing rather than merely the continued existence of an injury allegedly produced by Benk's 2015 decision.

Thus, Count I should be dismissed because all of the allegations therein are time-barred by the applicable four-year statute of limitations.

**2. Count II Fails to State a Timely Breach of Contract Claim.**

As an initial matter, Plaintiff's breach of contract claim is facially defective for failure to identify (i) what contract was alleged to be breached and (ii) with which Defendants he entered into such contract. Plaintiff entered into numerous contracts with Defendants throughout his involvement with Scientology, but he does not allege which one(s) the Defendants allegedly breached so as to support the cause of action asserted here. Plaintiff's breach-of-contract cause of action generally alleges "a contract, or enforceable contractual agreement, for specified training and auditing services." Am. Compl. ¶ 60.

While the failure to identify the actual contract at issue necessitates some speculation for choice-of-law purposes, that speculation would likely be confined to Florida (where the performance of the contract would have occurred, as well as where the contract was likely executed), or Georgia (where Plaintiff was located). Under either state's law, though, the contract claim is time-barred. Florida law imposes a five-year limitations period on an action on a written contract, running from accrual of the cause of action, and a contract claim generally accrues when the alleged breach occurs. Fla. Stat. § 95.11(2)(b); *State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So.2d 818, 821 (Fla. 1996). Georgia law imposes a six-year limitations period an action on a written contract, running from "the time the contract is broken and not at the time the actual damage results or is ascertained." O.C.G.A. § 9-3-24; *In re Tri-State Crematory Litigation*, 215 F.R.D. 660, 681 (N.D. Ga., 2003).

Here, the Amended Complaint establishes that the alleged breach occurred in 2015. Plaintiff alleges that Defendants agreed to provide an "approved training and auditing cycle," and breached that obligation by "restricting or terminating services" and "refusing to permit completion of the approved cycle." Am. Compl. ¶¶ 61, 63. Those events allegedly occurred in May 2015, when Debbie Benk communicated that Plaintiff "should not receive any more auditing," refused Plaintiff's request to withdraw or correct that communication, and FSO allegedly responded by "restricting or terminating his access to auditing and by preventing completion of

the approved training cycle." *Id.* ¶¶ 31-35. Plaintiff therefore both knew of the alleged breach and challenged it in 2015. His contract claim, filed in 2026, falls well outside Florida's applicable five-year limitations period.

Plaintiff cannot avoid that result by relabeling the consequences of the 2015 breach as "continuing contractual nonperformance." Although Plaintiff alleges that he later made requests for "review, correction, and internal relief" in 2022 through 2026, he identifies no contractual obligation that independently became due on any of those later dates. A completed breach does not become a perpetually recurring breach merely because its consequences continue or the injured party repeatedly requests that the defendant remedy it. *Suarez v. City of Tampa*, 987 So.2d 681, 686 (Fla. 2d DCA, 2008) ("When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort[3]").

Nor does Plaintiff plausibly plead tolling. He generically invokes "concealment, obstruction, reasonable reliance on internal procedures, or other legally recognized grounds," Am. Compl. ¶ 75, but alleges no facts showing that Defendants concealed the alleged breach or prevented him from timely asserting it.

---

[3] Florida courts have applied the reasoning from continuing torts cases to continuing breach of contract cases for the purpose of assessing accrual of the statute of limitations. *See, e.g., Raffay v. Longwood House Condominium Association, Inc.*, 389 So.3d 589, 593 (Fla. 3d DCA, 2023).

Count II therefore accrued in 2015 and was already time-barred years before Plaintiff filed this action in 2026. It should be dismissed.

**3. Count III Should Be Dismissed as Untimely and for Failure to State an IIED Claim.**

Plaintiff's claim for intentional infliction of emotional distress ("IIED") arises from allegations that Defendants relied on a false or misleading communication to characterize him as unworthy of continued auditing, directed that he be denied services, and thereafter refused to correct the communication. Am. Compl. ¶¶ 67-69. Plaintiff alleges that this conduct caused him severe emotional distress, humiliation, anxiety, professional harm, and financial consequences. *Id.* ¶¶ 70-71.

Georgia law likely supplies the substantive law governing this tort claim. A federal court exercising supplemental jurisdiction applies the forum state's choice-of-law rules to state-law claims. *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015). Under the traditional rule of *lex loci delicti,* the substantive law of the place of the injury generally governs. *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809, 621 S.E.2d 413, 414 (2005). Here, Plaintiff resides in Stone Mountain, Georgia. Am. Compl. ¶ 11. And although the Amended Complaint alleges conduct occurring both in Georgia and Florida, it does not clearly allege that Plaintiff sustained the emotional injury for which he seeks recovery in Florida. On the allegations presently before the Court, therefore, Georgia substantive law appears to provide the appropriate law governing Count III.

Under Georgia law, claims for injuries to the person generally must be commenced within two years after the cause of action accrues. O.C.G.A. § 9-3-33.[4] The allegedly tortious conduct underlying Count III occurred more than a decade before Plaintiff commenced this action. Am. Compl. ¶¶ 31-35. Those are the same operative events upon which Plaintiff expressly bases Count III. The Amended Complaint therefore establishes on its face that Plaintiff knew of the allegedly wrongful communication, challenged that communication, and allegedly suffered the resulting denial of services in 2015. Plaintiff's later efforts to obtain review or correction of that alleged wrong do not restart the limitations clock or transform the continuing consequences of the 2015 events into timely, independently actionable intentional torts. Count III should therefore be dismissed.

**C. <u>Ecclesiastical Abstention</u>**

Plaintiff's claims against Defendants also fail because they would necessarily entail this Court's interpretation of Scientology doctrine and intrusion into ecclesiastical matters—actions forbidden under the First Amendment. It is long-settled First Amendment law that "[w]henever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of [the] church judicatories to which the matter has been carried, the legal tribunals must accept such

[4] Even if Florida law were to govern, the applicable statute of limitations for intentional infliction of emotional distress would be four years. Fla. Stat. § 95.11(3)(n). This period has also long since expired.

decisions as final, and as binding on them." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 185–86 (2012) (quoting *Watson v. Jones*, 80 U.S. 679, 727 (1871)). "The government may not ... lend its power to one or the other side in controversies over religious authority or dogma." *Emp. Div., Dep't of Human Res. of Ore. v. Smith,* 494 U.S. 872, 877 (1990).[5]

Plaintiff's characterization of his dispute with Defendants as contractual is unavailing. Am. Compl. ¶¶ 59-65. At the heart of Plaintiff's claims is that Defendants terminated his access to Scientology services, including auditing and training, in violation of Scientology doctrine—and he asks this Court to restore his religious access. Am. Compl. ¶¶ 35, 48. Indeed, Plaintiff argues the breach lies in the Church Defendants' failure to follow the doctrine outlined by Scientology's founder L. Ron Hubbard, thereby justifying this Court's intervention to "grant protection from suppression of Scientology." Am. Compl. ¶ 48.

But this Court may not interpret Scientology doctrine to justify its intervention. *United States v. Lee,* 455 U.S. 252, 257 (1982) ("[i]t is not within 'the judicial function and judicial competence,' … to determine whether" one side or the

---

[5] *Accord Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 18-13452, 2021 WL 5074465, at *9 (11th Cir. Nov. 2, 2021) ("Although [plaintiffs] presented evidence to support their interpretation of Scientology doctrine, the International Justice Chief offered a conflicting interpretation. The First Amendment barred the district court from resolving this underlying controversy about church doctrine. To do so would have required it to decide whether [plaintiffs] or the Justice Chief more correctly perceived the commands of the Scientology religion." (cleaned up).

other in litigation "has the proper interpretation of the […] faith.") Nor may it compel the Church Defendants to restore Plaintiff's access to religious services. *Catholic League for Religious & C.R. v. City & Cnty. of San Francisco*, 567 F.3d 595, 608 (9th Cir. 2009), *on reh'g en banc*, 624 F.3d 1043 (9th Cir. 2010) ("the Establishment Clause prohibits government from intervening in a religious dispute.").

Accordingly, to the extent Plaintiff's claims rely on doctrinal interpretation or this Court's entanglement in Scientology's denial of religious services, those claims must be dismissed.

**D. <u>The Court Should Compel Arbitration of Any Remaining Claims.</u>**

Although Defendants contend that the arguments above support the dismissal of every cause of action asserted in the Amended Complaint, if any counts survive dismissal, then such counts must be resolved via arbitration. Plaintiff has entered into contracts with and for the benefit of all the Church Defendants containing valid and enforceable arbitration agreements (collectively, the "Arbitration Agreements"). Two such exemplary Arbitration Agreements include:

| Agreement | Arbitration Provision |
|---|---|
| November 1, 2010, Introductory Religious Service Enrollment Application, Agreement, and General Release between Plaintiff and <u>CSG</u>. A true and correct copy of this | "In accordance with the discipline, faith, internal organization, and ecclesiastical rule, custom and law of Scientology, should any dispute, claim or controversy arise between me and the Church, *any other Scientology Organization or any person employed by any such entity* which cannot be resolved informally by direct communication, I will pursue resolution of that dispute, claim or controversy solely and exclusively through Scientology's internal ethics, justice and binding religious |

| | |
|---|---|
| agreement is attached as **Exhibit D**. | arbitration procedures."<br><br>**Ex. D, ¶ n** (emphasis added). |
| March 1, 2011, Religious Services Enrollment Application, Agreement, and General Release between Plaintiff and FSO.[6] A true and correct copy of this agreement is attached as **Exhibit E.** | ". . . should any dispute, claim or controversy arise between [Plaintiff] and the Church, *any other Scientology church, any other organization which espouses, presents, propagates or practices the Scientology religion, or any person employed by any such entity*, which cannot be resolved informally by direct communication, [Plaintiff] will pursue resolution of that dispute, claim or controversy solely and exclusively through Scientology's internal Ethics, justice and binding religious arbitration procedures, which include application to senior ecclesiastical bodies, including, as necessary, final submission of the dispute to the International justice Chief of the Mother Church of the Scientology religion, Church of Scientology International or his or her designee."<br><br>**Ex. E, ¶ 6.d** (emphasis added). |

The Federal Arbitration Act ("FAA") mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). In determining whether a dispute is arbitrable, the court employs a two-part inquiry: first, whether a valid agreement

[6] The FSO Enrollment Agreement was re-signed by Plaintiff several times throughout the course of his involvement in Scientology: 1) March 1, 2011; 2) July 26, 2011; 3) January 26, 2012; 4) February 1, 2012; 5) November 12, 2012; and 6) December 13, 2012.

exists, and second, whether the disputes fall within the scope of the agreement. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

As to the first factor, Plaintiff makes conclusory allegations that there was no valid agreement to arbitrate the claims or that if there were, such arbitration agreement would be unenforceable "because the agreement, its terms, its formation, its scope, and its application to Plaintiff's statutory claims are disputed." Am. Compl. ¶¶ 45-46. However, Plaintiff has not identified which contract he contends contains the applicable arbitration agreement. Plaintiff cannot meaningfully argue that a contract was invalid or unenforceable if he cannot first identify the actual contract. To the contrary, Defendants contend that the Arbitration Agreements were valid and enforceable contracts: it was executed by the parties on March 1, 2011, and was reaffirmed on numerous occasions thereafter.

Further, while Plaintiff argues that any arbitration agreements should not be enforceable, the Eleventh Circuit has specifically held that religious arbitration agreements between the Church of Scientology and its members are neither substantively nor procedurally unconscionable. In *Garcia v. Church of Scientology Flag Service Organization, Inc.*, two former Scientology members were declared "suppressive persons," meaning that they were effectively expelled from Scientology, and eventually sued FSO and other Scientology entities to seek refunds of their donations and payments. 2021 WL 5074465, at *1 (11th Cir. 2021). The

Church entities sought to compel arbitration.

The Eleventh Circuit held the agreement (the same one executed by Plaintiff) was not procedurally unconscionable, because the agreement—which covered "any dispute, claim or controversy" between the plaintiffs and any Scientology-affiliated entity, and required the plaintiffs to resolve any dispute "exclusively through Scientology's Internal Ethics, Justice and binding religious arbitration procedures"—were sufficient to give the plaintiffs "some idea of the matters to be arbitrated and to provide some procedure to effect arbitration." *Id.* at *7. Nor was the agreement substantively unconscionable, because "the First Amendment prevented [the court] from entertaining the argument that Scientology doctrine rendered the arbitration agreements substantively unconscionable. . . . To do so would have required [the court] to decide whether the [plaintiffs] or the Justice Chief more correctly perceived the commands of [the Scientology religion]." *Id.* at *9.

As to the second factor, the broad Arbitration Agreements require the parties to arbitrate "<u>any</u> dispute, claim or controversy aris[ing] between [Plaintiff] and the Church [and] any other Scientology church" (emphasis added). The disputes set forth in the Amended Complaint plainly fall within the scope of this arbitration agreement, and indeed, implicate the very First Amendment issues recognized in *Garcia* for which religious arbitration is a uniquely appropriate forum for resolution.

Accordingly, should any of Plaintiff's claims survive dismissal on the grounds

asserted in this Motion, the Court should compel the arbitration of any such remaining claims under the terms of the enforceable Arbitration Agreements.

## IV. CONCLUSION

For the reasons discussed above, all counts against CSI and FSO should be dismissed for lack of personal jurisdiction. The claims against CSG should be dismissed because of both the applicable statutes of limitations and the ecclesiastical abstention doctrine. Should any claims survive dismissal on all of the above grounds, the Court should compel the parties to arbitrate such claims pursuant to their valid and enforceable contracts.

Respectfully submitted this 9th day of October, 2026.

*/s/ Alycen A. Moss*
Alycen A. Moss
Georgia Bar No. 002598
Christopher E. Neill
Georgia Bar No. 345575
Cozen O'Connor
1230 Peachtree Street, N.E.
The Promenade, Suite 400
Atlanta, GA 30309
Telephone: 404-572-2128
Email: cneill@cozen.com

*Attorneys for Defendants Church of Scientology International, Church of Scientology Flag Service Organization, and Church of Scientology of Georgia*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2026, I electronically filed the foregoing ***Defendants Church of Scientology International, Church of Scientology Flag Service Organization, and Church of Scientology of Georgia's Motion to Dismiss, or in the Alternative, Motion to Compel Arbitration and Memorandum of Law in Support thereof*** with the Court through their CM/ECF filing system which will automatically send electronic copies to all counsel of record.

This 9th day of October, 2026.

*/s/ Alycen A. Moss*
Alycen A. Moss
Georgia Bar No. 002598